UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DUANE THOMPSON,

Plaintiff,

v.

RICHARD BROKAW et al.,

Defendants.

Case No. 1:26-cv-848

Honorable Robert J. Jonker

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate order, the Court granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

## I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. The events

about which he complains occurred at that facility. Plaintiff sues the following IBC staff: Warden Richard Brokaw, Deputy Warden Unknown Haden, Inspector Unknown Ramirez, Sergeant Unknown Hall, Sergeant Unknown Nelson, Grievance Coordinator Unknown Brooke, and Hearing Investigator Unknown Klinesmith. (Compl., ECF No. 1, PageID.3–4.)

In Plaintiff's complaint, he alleges that on December 25, 2025, Defendant Hall wrote Plaintiff a Class II misconduct report. (*Id*., PageID.5.) Defendant Hall "then imposed 20 days [loss of privileges] (LOP) on the misconduct he himself had just finished writing."[1] (*Id*., PageID.6.) Plaintiff alleges that an "official hearing" was not held for the misconduct charge. (*Id*., PageID.5.) Instead, Defendant Nelson "signed the misconduct as [the] Employee Accepting Plea and Imposing Sanction," but did not meet with Plaintiff to conduct a hearing. (*Id*., PageID.5, 6, 7.) Plaintiff alleges that the "addition of [Defendant] Nelson's signature was meant to make it appear as if [Plaintiff] received an official hearing." (*Id*., PageID.5.)

The following day, December 26, 2025, Defendant Klinesmith, as Hearings Investigator, signed the misconduct report and "scheduled the illegally imposed LOP to begin on December 27, 2025." (*Id*., PageID.6.) Plaintiff asserts that the misconduct report was deficient because the "review section" of the misconduct report was blank but Defendant Klinesmith still scheduled the LOP. (*Id*., PageID.5.) Plaintiff claims that there was a "coordinated effort" between Defendants Hall, Nelson, and Klinesmith to "impose sanctions on a Class II misconduct without providing a review or hearing." (*Id*.)

On January 4, 2026, Plaintiff wrote to Defendants "Warden Brokaw, Deputy Warden Haden, and Inspector Ramirez" regarding the imposition of sanctions without Plaintiff being

[1] In this opinion, the Court corrects the punctuation, abbreviations, and capitalization in quotations from Plaintiff's complaint.

provided with "a review or hearing." (*Id.*, PageID.6.) Plaintiff informed Defendants Brokaw, Haden, and Ramirez that he was "currently serving LOP for this misconduct and asked for relief from the illegally imposed sanctions." (*Id.*, PageID.7.) Plaintiff did not receive a response from Defendants Brokaw, Haden, or Ramirez. (*Id.*) Plaintiff asserts that these Defendants were "assisting in the enforcement of these illegally imposed sanction days." (*Id.*, PageID.6.)

That same day, Plaintiff submitted grievances against Defendants Hall, Nelson, and Klinesmith for their issuance of the misconduct report and sanctions. (*Id.*, PageID.7.) On January 6, 2026, Plaintiff received a grievance response from Defendant Brooke, rejecting Plaintiff's grievances because the grievances "violated the grievance policy" regarding grieving misconduct charges. (*Id.*) Plaintiff objects to his grievance being rejected under this policy because "the issues [he] raised had nothing to do with a decision made in a Class II Misconduct hearing, as [he] received no hearing." (*Id.*) Plaintiff claims that Defendant Brooke rejected these grievances to protect Defendants Hall, Nelson, and Klinesmith. (*Id.*, PageID.8.)

Then, Defendant Brokaw, as Warden of IBC, limited Plaintiff's access to the grievance system by placing Plaintiff on "modified access" on January 6, 2026. (*Id.*) Defendant Brokaw "cited these rejected grievances [against Defendants Hall, Nelson, and Klinesmith]" as the reason for placing Plaintiff on modified access. (*Id.*) Plaintiff states that Defendant Brokaw was "fully aware that [Plaintiff's] right to due process had been violated . . . [and Defendant] Brokaw placed [Plaintiff] on modified access to bury this issue." (*Id.*)

On January 20, 2026, Plaintiff submitted a request to file a grievance for "staff corruption." (*Id.*) Plaintiff's proposed grievance was regarding Defendants Brokaw, Haden, and Ramirez "not taking action to right this wrong . . . of the[] illegally imposed sanctions." (*Id.*) Plaintiff alleges that "the manner in which this has been handled by these three senior staff members, [Defendants

Brokaw, Haden, and Ramirez], clearly meets the definition of staff corruption." (*Id.*) Plaintiff's request to submit this grievance was denied by Defendant Brooke as being duplicative of earlier grievances and untimely. (*Id.*, PageID.8–9.) Plaintiff states that Defendant Brooke's denial of his request to submit a grievance "is nothing more than an attempt to hinder [Plaintiff's] access to the grievances process." (*Id.*, PageID.9.)

Plaintiff then "made one last attempt to resolve this issue" with Defendants Brokaw, Haden, and Ramirez on January 20, 2026, but does not specify how he made this attempt. (*Id.*, PageID.9.) Plaintiff's "attempt [on January 20, 2026,] was also ignored." (*Id.*)

Based on the foregoing allegations, the Court construes Plaintiff's complaint to raise Fourteenth Amendment and § 1983 conspiracy claims against Defendants. Plaintiff seeks monetary damages.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Fourteenth Amendment Claims

#### 1. Issuance of the Misconduct Report and Loss of Privileges

The Court construes Plaintiff's complaint to raise a Fourteenth Amendment due process claim regarding the issuance of the misconduct report and his subsequent loss of privileges. Plaintiff alleges that on December 25, 2025, Defendant Hall wrote a Class II misconduct report against Plaintiff and imposed 20 days' loss of privileges without providing Plaintiff with a review or hearing. (Compl., ECF No. 1, PageID.5, 6.) Defendant Nelson then signed the misconduct report without meeting with Plaintiff and made "it appear as if [Plaintiff] received an official hearing." (*Id*., PageID.5.) Further, Defendant Klinesmith signed the misconduct report and scheduled the loss of privileges. (*Id*., PageID.6.) Plaintiff asserts that this was part of a "coordinated effort" between Defendants Hall, Nelson, and Klinesmith to "impose sanctions on a Class II misconduct without providing a review or hearing." (*Id*., PageID.5.)

**a. Procedural Due Process**

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

In *Sandin v. Conner*, the Supreme Court held that a prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486–87 (1995). Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Here, Plaintiff alleges that he received a Class II misconduct conviction and that he received 20 days' LOP as a sanction. (Compl., ECF No. 1, PageID.5, 6.) Plaintiff does not allege that the Class II misconduct conviction impacted the duration of his sentence, and he cannot allege this because the sanctions available in the MDOC disciplinary scheme for Class II misconduct convictions do not affect the duration of an inmate's sentence. *See generally* MDOC Policy Directive 03.03.105 (eff. Mar. 17, 2025). The Sixth Circuit has routinely held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g.*, *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th

Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999).

Further, even if Plaintiff's LOP sanction resulted in segregation-like conditions, without any further allegations to suggest anything "atypical," the sanctions would still be far short of the prison conditions that are generally deemed atypical and significant. *Finley v. Huss*, 102 F.4th 789, 813 (6th Cir. 2024) (noting that the prisoner's three months in administrative segregation, without more, was not atypical and significant and did not implicate a liberty interest); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir.), *cert. denied*, 522 U.S. 848 (1997) (finding that a six–month term in administrative segregation was not "atypical and significant," without discussion of the conditions in segregation). Plaintiff's allegations do not suggest that his loss of privileges constituted an atypical or significant hardship.

Accordingly, Plaintiff has failed to state a procedural due process claim regarding his Class II misconduct charge and conviction.

**b. Substantive Due Process**

The Court also construes Plaintiff's allegations to assert a violation of his substantive due process rights under the Fourteenth Amendment, which prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman*

*v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998) (quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952))). The Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999); *see also Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, *4 (W.D. Mich. Dec. 22, 2016); *Robinson v. Schertz*, No. 2:07-cv-78, 2007 WL 4454293 (W.D. Mich. Dec. 14, 2007).

"Where a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright*, 510 U.S. at 269 (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners), *overruled on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001)). If such an amendment exists, the substantive due process claim is properly dismissed. *Resurrection Sch. v. Hertel*, 11 F.4th 437, 461–462 (6th Cir. 2021) (holding that the Free Exercise Clause constituted the textual source for plaintiffs' claim, precluding a substantive due process claim) (citing *Albright*, 510 U.S. at 273); *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

In this case, there are specific constitutional amendments that apply to Plaintiff's claims regarding his misconduct report and loss of privileges. The Fourteenth Amendment Procedural Due Process Clause would apply to protect Plaintiff's liberty interest in his privileges, if one existed. *Sandin*, 515 U.S. at 486–87.

Moreover, any intended substantive due process claims are entirely conclusory. And, the facts alleged in the complaint fall short of showing the sort of egregious conduct that would support a substantive due process claim. *Cf. Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988) (holding that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power"), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999) (en banc); *Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, *4 (W.D. Mich. Dec. 22, 2016).

Consequently, Plaintiff's substantive due process claim will be dismissed.

**2. Grievance Procedure**

Plaintiff claims that on January 4, 2026, and January 20, 2026, Plaintiff wrote to Defendants Brokaw, Haden, and Ramirez regarding the improper misconduct report and sanctions, but did not receive a response. (Compl., ECF No. 1, PageID.6, 7, 9.) Plaintiff also submitted grievances regarding the misconduct report and sanctions on January 4, 2026, but they were rejected by Defendant Brooke. (*Id.*, PageID.7.) Plaintiff disagrees with the grievance rejections. (*Id.*) Then, on January 6, 2026, Plaintiff's access to the grievance system was limited when Defendant Warden Brokaw placed Plaintiff on "modified access." (*Id.*, PageID.8.) Plaintiff also tried to submit a grievance on January 20, 2026, for "staff corruption," but it was rejected as being duplicative and untimely. (*Id.*, PageID.8–9.) Based on these allegations, the Court construes

Plaintiff's complaint to raise a Fourteenth Amendment procedural due process claim regarding his use of the grievance procedure at IBC.[2]

Various courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And, Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Thus, because Plaintiff has no liberty interest in the grievance process, any response, or lack thereof, to Plaintiff's grievances did not deprive Plaintiff of due process.

Accordingly, Plaintiff's Fourteenth Amendment due process claims regarding his use of the grievance procedure at IBC will be dismissed for failure to state a claim.

---

[2] Further, to the extent that Plaintiff intended to raise a First Amendment claim regarding his placement on modified grievance access, he fails to state such a claim. "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Plaintiff had other means of exercising his right to petition government for redress of grievances. Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Further, Plaintiff was not wholly denied access to the grievance process. Placement on modified access does not prohibit an inmate from utilizing the grievance process. *See Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445-47 (6th Cir. 2005); *Corsetti v. McGinnis*, 24 F. App'x 238, 241 (6th Cir. 2001). The inmate may still request a grievance form and, if the form is provided, submit grievances to the grievance coordinator, who reviews the grievance to determine whether it complies with institutional rules regarding the filing of grievances. *See* MDOC Policy Directive 03.02.130 ¶ SS (eff. Oct. 21, 2024).

**B. Conspiracy Claims Under § 1983**

In Plaintiff's complaint, he asserts that there was a "coordinated effort" between Defendants Hall, Nelson, and Klinesmith to "impose sanctions on a Class II misconduct without providing a review or hearing." (Compl., ECF No. 1, PageID.5.) Plaintiff further claims that Defendant Brooke rejected Plaintiff's grievances to protect Defendants Hall, Nelson, and Klinesmith, and that Defendant Brokaw placed Plaintiff on modified access to the grievance system in order to "bury this issue." (*Id.*, PageID.8.) The Court construes these allegations to raise conspiracy claims under § 1983.

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of a "coordinated effort" or conspiracy are conclusory and speculative. Plaintiff has a subjective belief that the Defendants took actions to impose a 20-day loss of privilege sanction against him and "bury" the issue; however, Plaintiff alleges no *facts* that indicate the existence of a plan, much less that any Defendant shared a conspiratorial objective.

Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement between them. He relies entirely on a highly attenuated inference from the mere fact that he has been disciplined by or subjected to objectionable treatment by a variety of prison officials in circumstances with which he disagreed but, as discussed above, did not violate his constitutional rights.

As the United States Supreme Court has held, such allegations, while hinting at a sheer "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556–57. Instead, the Supreme Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Accordingly, because Plaintiff does not allege *facts* to show an agreement among the Defendants, Plaintiff fails to state a plausible § 1983 civil conspiracy claim.

Accordingly, for these reasons, all of Plaintiff's conspiracy claims under § 1983 will be dismissed for failure to state a claim.

### C. Claims Against Defendants Brokaw, Haden, or Ramirez Premised on Supervisory Liability

To the extent Plaintiff seeks to hold Defendants Brokaw, Haden, or Ramirez liable due to their supervisory positions, Plaintiff fails to state a claim. Plaintiff alleges that Defendant Brokaw was aware of the "wrongdoing on the part of his subordinates." (*See* Compl., ECF No. 1, PageID.10.) Plaintiff further alleges that Defendants Brokaw, Haden, and Ramirez knew of Plaintiff's loss of privileges and "failed to take action" to remove the loss of privileges. (*Id.*)

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676

(2009); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The Sixth Circuit has repeatedly summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any *facts* showing that Defendant Brokaw, Haden, or Ramirez encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in their conduct. (*See* Compl., ECF No. 1, PageID.10.) As discussed above, denial of a grievance or failure to respond to a grievance is insufficient for § 1983 liability. *See Shehee*, 199 F.3d at 300.

Accordingly, any claims against Defendants Brokaw, Haden, or Ramirez premised on their supervisory positions will be dismissed for failure to state a claim.

**Conclusion**

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

A judgment consistent with this opinion will be entered.

Dated: August 26, 2026

/s/ Robert J. Jonker
Robert J. Jonker
United States District Judge